Frank **PADAVAN, Charles D. Cook, Joseph R. Holland, Serphin R. Maltese, John J. Marchi, Michael J. Tully, Jr., Dale M. Volker and Rensselaer County, Nassau County and Suffolk County, on their own behalf and as class representatives of all counties in New York, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Janet Reno, Attorney General of the United States, Doris Meissner, Commissioner of the Immigration and Naturalization Service, Carol Chasse, Director of the INS Eastern Regional Office, John J. Ingham, Director of the INS Buffalo District, Edward J. McElroy, Acting Director of the INS New York District, Donna E. Shalala, Secretary of the United States Department of Health and Human Services and Alice Rivlin, Director of the Office of Management and Budget, Defendants–Appellees.**

No. 885, Docket 95–6156.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1996.

Decided April 17, 1996.

David Markey, Counsel, New York State Senate Majority Task Force on Immigration, Albany, NY (Charles J. Assini, Jr., Counsel to State Senator Frank Padavan, Robert A. Smith, County Attorney for the County of Rensselaer, Owen B. Walsh, County Attorney for the County of Nassau, Robert Cimino, County Attorney for the County of Suffolk, of counsel), for Plaintiffs–Appellants.

Mark B. Stern, Appellate Staff Civil Division, Department of Justice, Washington, DC (Thomas J. Maroney, United States Attorney for the Northern District of New York, Frank W. Hunger, Assistant Attorney General, Ellen D. Katz, Appellate Staff Civil Division, Department of Justice, Washington, DC, of counsel), for Defendants–Appellees.

Before: VAN GRAAFEILAND, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants New York State Senators Frank Padavan, Charles D. Cook, Joseph R. Holland, Serphin R. Maltese, John J. Marchi, Michael J. Tully, Jr., and Dale M. Volker, along with Rensselaer, Nassau, and Suffolk Counties [1] (together, the "plaintiffs") appeal from a judgment entered in the United States District Court for the Northern District of New York (McAvoy, C.J.) granting the motion of defendants-appellees United States of America *et al.* (the "federal government") to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court found that the plaintiffs' complaint seeking financial support from the federal government to compensate New York State and its subdivisions for costs associated with the education, confinement, health, and welfare of legal and illegal aliens failed to state claims for relief under the Naturalization Clause, the Guarantee Clause, the Invasion Clause, the Tenth Amendment, and the Administrative Procedure Act. We assume, without deciding, that these plaintiffs have the requisite standing to bring this action and, for the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

When reviewing a district court's dismissal of a complaint for failure to state a claim, we accept the facts alleged in the complaint as true. *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, ——, 113 S. Ct. 2891, 2895, 125 L.Ed.2d 612 (1993); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 670 (2d Cir.1995). According to the complaint in this case, the federal government has failed to control illegal immigration, and this failure has had serious financial consequences for New York State. The plaintiffs assert that there are over 530,000 illegal aliens residing

---

**1.** The counties have brought this action on their own behalf and as proposed class representatives of all counties in New York State.

in New York and at least 50,000 entering the state every year. The plaintiffs claim that, in 1993, the cost to New York State and its subdivisions of providing services to legal and illegal immigrants amounted to $5.6 billion.

Based on the foregoing, the plaintiffs plead seven causes of action, claiming that the federal government has violated various statutory and constitutional provisions in carrying out its immigration policy. Plaintiffs allege that the federal government has violated: the Naturalization Clause (Counts I and II); the Guaranty Clause (Counts III and IV); the Invasion Clause (Count V); the Tenth Amendment (Count VI); and the Immigration and Naturalization Act ("INA") (Count VII). As relief, the plaintiffs principally seek monetary support from the federal government to compensate New York State and its subdivisions for the expenditures it has been constrained to make as a result of the federal government's immigration policy.

At an April 10, 1995 hearing on the federal government's motion to dismiss, the district court found that Counts I through V and Count VII raised nonjusticiable political questions and failed to state claims upon which relief could be granted. As to Count VI, the district court did not decide whether the claim was justiciable, but found that it failed to state a claim upon which relief could be granted. By Order dated April 18, 1995, the district court dismissed the plaintiffs' complaint. This appeal followed.

## DISCUSSION

We review *de novo* a grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980).

### 1. Naturalization Clause

■ In the first two counts of their complaint, the plaintiffs allege two causes of action predicated on the Naturalization Clause. The Naturalization Clause, in relevant part, states that "Congress shall have Power ... To establish an uniform Rule of Naturalization." U.S. Const. art. I, § 8. In Count I, the plaintiffs claim that, because the Naturalization Clause grants the federal government exclusive power over immigration, the Naturalization Clause requires the federal government to reimburse New York State for any costs that it has incurred as a consequence of the federal government's immigration policy. In Count II, the plaintiffs contend that, because the federal government has failed to control illegal immigration and has failed to reimburse New York State for any expenses the state has paid as a result of its failed immigration policy, the federal government has violated the Naturalization Clause.

#### a. Count I

■ It is unchallenged that the federal government has plenary power over immigration. The Supreme Court has stated that "[t]he authority to control immigration ... is vested solely in the Federal government," *Truax v. Raich,* 239 U.S. 33, 42, 36 S.Ct. 7, 11, 60 L.Ed. 131 (1915), and that the formulation of "[p]olicies pertaining to the entry of aliens and their right to remain here ... is entrusted exclusively to Congress," *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 743, 98 L.Ed. 911 (1954). From these well-established principles, the plaintiffs draw the novel conclusion that the federal government is obligated to reimburse New York State for expenditures that it has made on legal and illegal aliens. We think that this contention is without merit.

■ First, there is no constitutional or statutory support for the plaintiffs' contention. Moreover, the plaintiffs cannot point to any caselaw to support their proposition. Indeed, constitutional principles enunciated by the Supreme Court support a different conclusion. As far back as *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), the Supreme Court has held that the federal government may exercise its plenary powers even though the effects of such exercises of power may be onerous to the states. *See id.* at 427 ("It is of the very essence of

supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence."). Such principles continue to apply. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 549, 105 S.Ct. 1005, 1016–17, 83 L.Ed.2d 1016 (1985) ("Interference with the power of the States was no constitutional criterion of the power of Congress. If the power was ... given, [Congress] might exercise it, although it [may] interfere with the laws, or even the Constitution of the States." (citation omitted)).

The plaintiffs' only argument—outside of their broad assertion that the federal government's plenary power over immigration requires it to reimburse New York State—is that the immigration power is unique among federal powers and that this, coupled with various federal statutory and constitutional mandates requiring expenditures for or on behalf of aliens by New York State, gives rise to a duty by the federal government to reimburse New York State. Although the immigration power may be unique, there is no statutory or constitutional provision for reimbursement, nor is there any caselaw authority that supports it. Accordingly, Count I was properly dismissed by the district court.

### b. Count II

■ In Count II, the plaintiffs contend that, because the federal government has plenary power over immigration and because it has failed to control immigration, the federal government has violated the Naturalization Clause by not reimbursing New York State for expenditures that it has had to make as a result of the federal government's failed immigration policy. We think that Count II was properly dismissed by the district court as nonjusticiable.

In determining whether an issue is nonjusticiable under the political question doctrine, we apply the analysis set forth by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In *Baker*, the Court stated:

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710. Applying the factors set forth in the *Baker* analysis, it is evident that Count II presents a nonjusticiable question. First, as the district court properly found, it cannot be disputed seriously that there is "a textually demonstrable constitutional commitment" of naturalization and immigration to Congress. *See* U.S. Const. art. I, § 8. Because of this textual commitment, "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (citation omitted). In addition, there is "a lack of judicially discoverable and manageable standards for resolving" whether the federal government's immigration policy is a failure. Because the question whether immigration control is a failure is largely a matter of opinion, it likely would be impossible for this court to reach a conclusion on the matter. Furthermore, this court's adjudication of questions as to the success or failure of the federal government's immigration policy poses a grave risk of national embarrassment and clearly is something better left to the elected branches of our national government. For these reasons, Count II was properly dismissed as nonjusticiable.

### 2. Guarantee Clause

■ Counts III and IV of the plaintiffs' complaint are predicated on the Guarantee Clause. The Guarantee Clause provides:

"The United States shall guarantee to every State in this Union a Republican Form of Government." U.S. Const. art. IV, § 4. The plaintiffs argue that the federal immigration policy infringes on the right of the citizens of New York to determine, through their representatives, the spending priorities of their state and local governments, and therefore that it violates the Guarantee Clause. We disagree.

The Supreme Court traditionally has held that claims brought under the Guarantee Clause are nonjusticiable political questions. *See Colegrove v. Green,* 328 U.S. 549, 556, 66 S.Ct. 1198, 1201, 90 L.Ed. 1432 (1946) (holding that a "[v]iolation of the great guaranty of a republican form of government in States cannot be challenged in the courts"); *see also City of Rome v. United States,* 446 U.S. 156, 182 n. 17, 100 S.Ct. 1548, 1564 n. 17, 64 L.Ed.2d 119 (1980); *Pacific States Tel. & Tel. Co. v. Oregon,* 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912). While it is possible that "perhaps not all claims under the Guarantee Clause present nonjusticiable political questions," *see New York v. United States,* 505 U.S. 144, 185, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992), there is no basis for us to say that the plaintiffs here have presented a justiciable claim. Furthermore, nothing in their complaint indicates in any way that federal immigration policies are depriving New York State of a republican form of government.

### 3. Invasion Clause

■ In Count V, the plaintiffs contend that the federal government violated the Invasion Clause [2] because the influx of legal and illegal aliens into New York State represents an "invasion," and the federal government has failed to protect New York State from this invasion. We think that this count was properly dismissed by the district court.

■ Assuming, *arguendo,* that the plaintiffs' Invasion Clause claim is justiciable, the claim still must be dismissed for failure to state a claim upon which relief can be granted. In order for a state to be afforded the

protections of the Invasion Clause, it must be exposed to armed hostility from another political entity, such as another state or foreign country that is intending to overthrow the state's government. *See The Federalist* No. 43 (James Madison) (stating that the reason for the Invasion Clause is to protect the states from "foreign hostility" and from "ambitious or vindictive enterprises" on the part of other states or foreign nations). Clearly, New York State is not being subjected to the sort of hostility contemplated by the Framers.

In any event, the plaintiffs' Invasion Clause claim is nonjusticiable. The protection of the states from "invasion" involves matters of foreign policy and defense, which are issues that the courts have been reluctant to consider. *See, e.g., Barclays Bank PLC v. Franchise Tax Bd.,* —— U.S. ——, ——————, 114 S.Ct. 2268, 2284–85, 129 L.Ed.2d 244 (1994); *Chicago & S. Air Lines v. Waterman S.S.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948).

### 4. Tenth Amendment

■ In Count VI of their complaint, the plaintiffs contend that the federal immigration policy has coerced New York State into providing social, educational, health, and correctional services in violation of the Tenth Amendment. The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Supreme Court has interpreted the Tenth Amendment as prohibiting Congress from "simply 'commandee[ring] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *New York,* 505 U.S. at 161, 112 S.Ct. at 2420 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981)).

The plaintiffs allege that "they are required to implement federal mandates by,

---

**2.** The Invasion Clause states: "The United States . . . shall protect each of [the states] against Invasion." U.S. Const. art. IV, § 4.

among other things, the restrictions placed on the form of legislation that they may enact." As examples, the plaintiffs point to the fact that New York State may not refuse to provide emergency medical care to illegal aliens, and that, under *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) [3] New York State may not deny an education to immigrant children, including illegal aliens. Furthermore, the plaintiffs claim that New York State is forced to expend funds to incarcerate illegal immigrants. We think that the plaintiffs' claims are baseless because the federal government is not "commandeering" New York State into providing these services.

For instance, as to the plaintiffs' claim that they must provide emergency medical services to illegal immigrants, this is only true because New York State participates in the federal Medicaid program. Medicaid is a voluntary program in which states are free to choose whether to participate. *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513–14, 110 L.Ed.2d 455 (1990). If New York chose not to participate, there would be no federal regulation requiring the state to provide medical services to illegal aliens.

In addition, the requirement that states provide education to illegal immigrant children is derived from the Constitution and therefore cannot violate the Tenth Amendment. The purpose of the Tenth Amendment is to limit Congress from usurping power that was reserved to the states. *See, e.g., New York,* 505 U.S. at 156–57, 112 S.Ct. at 2417–18. The Tenth Amendment does not permit states to avoid constitutional requirements. *See Puerto Rico v. Branstad,* 483 U.S. 219, 228, 107 S.Ct. 2802, 2808, 97 L.Ed.2d 187 (1987) (holding that, "[b]ecause the duty is directly imposed upon the States by the Constitution itself, there can be no need to weigh the performance of the federal obligation against the powers reserved to the States under the Tenth Amendment"). Finally, while it may be true that New York State spends a large sum of money on the incarceration of illegal immigrants convicted of state felonies, the state's obligation to incarcerate illegal aliens stems from its own laws, and not from any federal mandate. For these reasons, the district court properly dismissed the plaintiffs' Tenth Amendment claim.

### 5. *Administrative Procedure Act*

In their final Count, the plaintiffs contend that the Immigration and Naturalization Service ("INS") has failed to carry out its "duty to control and guard the boundaries and borders of the United States" as required by the INA, 8 U.S.C. § 1103. The plaintiffs argue that, under the Administrative Procedure Act ("APA"), this failure is arbitrary, capricious, and an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). We think that judicial review of this matter is precluded and that the count was properly dismissed by the district court.

Decisions relating to immigration control are discretionary matters, and the APA precludes judicial review of matters "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) held that, under § 701(a)(2), judicial review is precluded "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830, 105 S.Ct. at 1655.

In the present case, in determining the merits of the plaintiffs' claim, we would have to consider whether the INS adequately has controlled immigration into New York State, and whether revenues should have been directed to that problem rather than at other projects considered priorities by the INS. Because this is strictly a discretionary matter, the plaintiffs' claim is not reviewable by this court. *See* 8 U.S.C. § 1103(a) ("[The Attorney General] shall have the power and duty to control and guard the boundaries and borders of the United States against illegal entry of aliens and shall, in [her] discretion,

---

**3.** In *Plyler,* the Supreme Court held that a Texas statute that discriminated in public education on the basis of illegal alienage violated the Equal Protection Clause of the Fourteenth Amendment. *See* 457 U.S. at 230, 102 S.Ct. at 2401–02.

appoint for that purpose such number of employees of the Service as to [her] shall appear necessary and proper."). For these reasons, we think that the district court properly dismissed Count VII.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the district court dismissing the complaint for failure to state a claim.

VAN GRAAFEILAND, Circuit Judge, concurring in result:

Because I believe that my colleague's opinion establishes some unnecessarily broad legal principles that we might find difficult to distinguish in future cases, I am content to concur in the result. I do so.