**Angela DEAN, Plaintiff,**

v.

**WESTCHESTER COUNTY DISTRICT ATTORNEY'S OFFICE, Jeanine Pirro, District Attorney for Westchester County, Francis T. Donohue, Chief Assistant District Attorney, and Paul Scharf, Assistant District Attorney, Defendants.**

No. 00 CIV. 3317(WCC).

United States District Court, S.D. New York.

Nov. 3, 2000.

Weiner & Katz, L.L.C., Livingston, NJ (Paul I. Weiner, of counsel), for Plaintiff.

Alan D. Scheinkman, Westchester County Attorney, White Plains, NY (Joseph F. Berrafati, Lissette M. Figueroa, Asst. County Attorneys, Kyle C. McGovern, Sr. Asst. County Attorney, of counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Angela Dean, an African–American woman, brings the instant action against defendants Westchester County District Attorney's Office, Jeannine Pirro, District Attorney for Westchester County, Francis T. Donohue, Chief Assistant District Attorney, and Paul Scharf, Assistant District Attorney, pursuant to Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII") and N.Y. Executive Law § 290 *et. seq.* Plaintiff, an attorney, alleges that because of her race and gender, she was harassed, constructively discharged, subjected to intentional infliction of emotional distress and ultimately discharged in retaliation for her complaints about such treatment. Defendants now move to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim. For the foregoing reasons, defendants' motion is granted.

## BACKGROUND

The relevant facts, as alleged in plaintiff's complaint, are as follows:

Plaintiff, a graduate of Villanova University School of Law, began working for defendant Westchester County District Attorney's Office as an Assistant District Attorney in September 1997. She was initially assigned to the Appeals and Special Litigation Division where she handled motions in felony cases. (Complt. ¶¶ 10–11.) On November 22, 1998 she was promoted to the Local Criminal Court Bureau where her new job responsibilities included trying cases and making court appearances. (*Id.* ¶¶ 12–13.) After the promotion, plaintiff did not receive any training or supervision in connection with the new job. (*Id.* ¶ 14.)

On December 4, 1998 plaintiff reviewed the files in the case of *People v. Peter Nigro* and became aware that the trial had been adjourned several times and that no action by the District Attorney's Office had been taken in the case. Although plaintiff requested another adjournment, the judge refused and set a trial date for January 6, 1999. At that time, defendant Scharf, concerned that the number of adjournments charged against the District Attorney's Office would ultimately result in dismissal, attempted to contact the judge to discuss his concerns, but without success. He then informed plaintiff, in a "very cursory manner," that he wanted to review all of her files. (Complt., Ex. A.) No further instruction or assistance was given to plaintiff in her preparation for trial of the *Nigro* case. (*Id.*)

On January 6, 1999 the *Nigro* case was dismissed due to the number of adjournments. (*Id.*) Plaintiff alleges that Scharf brought her to tears (*Id.*) when he told her: that the dismissal was due to her own negligence (Complt.¶ 17); that she was a bad attorney (Complt., Ex. A); and that she should not be practicing law. (*Id.*) Scharf gave her no assistance in appealing the dismissal of the case and "continued to make remarks and offensive comments to plaintiff, including but not limited to discriminatory intimidation, ridicule, insult and harassment." (Complt.¶ 17.) Thereafter, plaintiff sought medical attention and was advised by her doctor to take time off from work. (*Id.* ¶ 19.) At an unspecified time thereafter, defendant Donohue threatened to prosecute her for allegedly stealing literature valued at $27.50. (*Id.* ¶¶ 32, 34.) On March 15, 1999 plaintiff paid for the materials by check. (*Id.* ¶ 31.)

On January 13, 1999 defendant Donohue told plaintiff that her job performance in the *Nigro* case had caused both the police department and the victim's family to complain. He gave plaintiff the choice of either resigning or returning to her former position in the Appeals Division (Complt., Ex. A) without affording her the opportunity to explain. (Complt.¶ 18.) A memo was then distributed to all of the District Attorney Offices informing them of plaintiff's reassignment to the Appeals Division. (Complt., Ex. A.) Plaintiff also contends that there were "slanderous statements" made about her to others (*Id.*), but fails to provide any examples.

On January 8, 1999 plaintiff retained legal counsel. (Complt.¶ 18.) On January 28, 1999 plaintiff's attorney wrote a letter to defendant Pirro alleging that plaintiff had been the subject of discrimination, harassment, slanderous statements and constructive discharge. (Complt, Ex. A.) On February 5, 1999 Donohue terminated plaintiff, who alleges that the reasons offered were pretextual and that the termination was in direct retaliation for the January 28, 1999 letter from plaintiff's counsel. (Complt.¶ 21.) In March, 1999 plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") (*Id.* ¶ 9), was issued a right-to-sue letter, and commenced the instant action.

## DISCUSSION

### I. *Applicable Law*

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Securities Litigation*, 825 F.Supp. 578, 583 (S.D.N.Y.1993). Furthermore, in assessing the legal sufficiency of a claim, the court may consider not only the facts alleged in the complaint, but also any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996).[1]

On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (*quoting Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66

---

1. In the instant case, the January 28, 1999 letter written by plaintiff's counsel to defendant Pirro complaining about plaintiff's work environment, discussed *supra*, was attached to the complaint (Complt., Ex. A) and incorporated by reference in paragraph 20. Accordingly, this document will be considered by the Court in the disposition of defendants' motion.

L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978).

## II. *Plaintiff's Claim of Sexual and Racial Discrimination Under Title VII*

■ Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). However, the Second Circuit has concluded that Congress did not intend to hold individuals liable under Title VII. *See Tomka v. Seiler*, 66 F.3d 1295, 1313–17 (2d Cir.1995); *Shepard v. Frontier Communications Servs. Inc.*, 92 F.Supp.2d 279, 287 (S.D.N.Y.2000) (Conner, J.). Therefore, plaintiff's claims against the individual defendants, Pirro, Scharf, and Donohue, pursuant to Title VII are dismissed with prejudice.[2]

■ Plaintiff's sexual and racial discrimination claims against defendant Westchester County District Attorney's Office under Title VII are based on both hostile work environment and disparate treatment theories. However, punitive damages are not recoverable against a municipality under Title VII. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (prohibiting punitive damages against a municipality in a section 1983 suit; stating that punitive damages against a municipality hurt innocent taxpayers); *Brennan v. City of White Plains*, 67 F.Supp.2d 362, 378 (S.D.N.Y. 1999) (prohibiting punitive damages against a municipality in a Title VII suit). Therefore, any claim for punitive damages under Title VII against defendant Westchester County District Attorney's Office is dismissed with prejudice. *See also infra* Part V (discussing punitive damages against a municipality under state law).

### A. *Hostile Work Environment*

■ In order to succeed on a claim for hostile work environment, the plaintiff must show that the workplace was so ridden with "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). The plaintiff must also show that there is a specific basis for imputing the conduct to the employer. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir.1997). The same standards apply to both race-based and sex-based hostile environment claims. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 n. 2 (2d Cir.1999); *Torres*, 116 F.3d at 630.

■ The Supreme Court has provided guidance and established a non-exclusive list of factors that should be weighed when determining whether a workplace is permeated with discrimination. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. These factors include: (1) the frequency and severity of the conduct; (2) whether the conduct was physically threatening, humiliating or merely an offensive utterance; (3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on the employee's psychological well-being. *See id.* Although one encounter may constitute a hostile work environment,

**2.** Defendants did not move to dismiss any of the claims against the individual defendants brought under state law. Accordingly, the Court will not consider the issue.

conduct that can be categorized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir. 1998); *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986). The hostility of a work environment is determined by the totality of the circumstances. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■ In the instant case, plaintiff's claim of hostile work environment is based on three allegations. First, plaintiff alleges that after the *Nigro* case was dismissed, Scharf "continued to make remarks and offensive comments to plaintiff, including but not limited to discriminatory intimidation, ridicule, insult and harassment" thereby "creat[ing] a hostile and intolerable work environment for plaintiff." (Complt.¶ 17.) Second, plaintiff, one of three African–American women employed by defendant Westchester County District Attorney's Office, contends that "upon information and belief," defendants did not discipline or discharge similarly situated white, male employees who were responsible for the dismissal of one case. (*Id.* ¶ 25.) Finally, she alleges that defendants violated Title VII by vigorously harassing plaintiff due to the dismissal of one case, by treating plaintiff with less civility than other non-minority employees in similar circumstances, by failing to give plaintiff an opportunity to address the claims made against her and by demoting plaintiff without cause. (*Id.* ¶ 27.)

As plaintiff correctly notes, pleadings under the Federal Rules of Civil Procedure are "notice" pleadings. They require only a short, plain statement of the claim and of the relief to which plaintiff is entitled under the law. *See* FED. R. CIV. P. 8(a)(2). However, plaintiff must allege at least some of the facts that would support a prima facie case. *See Wilson v. Reuben Donnelly Corp.,* No. 98 Civ. 1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998).

In this case, plaintiff's allegations that defendants' discriminatory acts created a hostile work environment were merely conclusory and failed to put defendant on notice of any of the underlying facts or events. Plaintiff has not cited any examples of the discriminatory insults and has not described any circumstances surrounding the alleged discriminatory conduct that would support a prima facie case of hostile work environment. *See Salvatore v. KLM Royal Dutch Airlines,* No. 98 Civ. 2450, 1999 WL 796172, at *4 (S.D.N.Y. Sept. 30, 1999) (stating that there were no factual allegations in the complaint to support the statement that the conduct was "repeated, recurrent and . . . pervaded the daily work life of each plaintiff"); *Gregory v. Daly,* 78 F.Supp.2d 48, 49 (N.D.N.Y. 1999) (dismissing the complaint . because plaintiff's accusations that the defendant made demeaning comments about women were not supported with specific examples); *Edwards v. Sheehan Memorial Hosp.,* No. 99–CV–0489E, 2000 WL 914131, at *2 (W.D.N.Y. June 19, 2000) (dismissing the complaint in a Title VII action because plaintiff merely alleged that she was subjected to harassment and disparate treatment and did not refer to any dates or places). Plaintiff merely states that she was subjected to harassment and believes that similarly situated white, male employees were treated better. However, the mere fact that plaintiff believes her environment was abusive or her treatment unfair is not enough to constitute a claim for hostile work environment; it must be abusive to a reasonable person. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367. Plaintiff's failure to adequately describe the alleged conduct precludes this Court from weighing the factors enumerated in *Harris* and from determining whether the plaintiff could present evidence to support her claim.

## B. *Disparate Treatment*

In a Title VII case, the Court applies the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a Title VII claim of individual disparate treatment based on race and gender, plaintiff must allege that: (1) she is a member of a protected class; (2) she was performing her duties satisfactorily; and (3) her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class. *See id.* at 802, 93 S.Ct. 1817. Once plaintiff establishes a prima facie case, a presumption of discrimination is raised and the burden of production shifts to defendants to articulate a legitimate, clear, specific and nondiscriminatory reason for discharging the employee. *See id.* The burden of going forward then shifts back to plaintiff to demonstrate that defendants' reasons are pretextual. *See id.* at 804, 93 S.Ct. 1817.

█ Plaintiff did not establish a prima facie case because she failed to allege facts satisfying the third element of the *McDonnell Douglas* test. As plaintiff is an African–American woman, she is a member of a protected class. Taking all inferences in favor of plaintiff, the Court will assume that she satisfactorily performed her job. However, plaintiff's claim must be dismissed because the general, conclusory allegations concerning the harassment of her and the treatment of similarly situated white, male employees fails to create an inference of discrimination.

There was not an adequate allegation of facts tending to show that defendants' statements and actions were motivated by race or sex. Although plaintiff is a woman who was disciplined by male supervisors, she fails to indicate how their respective genders played any significant role in their working relationship. Plaintiff has not even alleged the race of the supervisors. *See Ortega v. New York City Off–Track Betting Corp.,* No. 97 Civ. 7582, 1999 WL 342353, at *5 (S.D.N.Y. May 27, 1999) (discussing the plaintiff's failure to plead specific factual allegations that would give rise to an inference of discrimination). Furthermore, the mere fact that she believed white, male employees similarly situated were not disciplined for similar professional failures is not a sufficient basis to infer discrimination. Even if plaintiff's job performance was exceptional and the dismissal of the *Nigro* case was not her fault, plaintiff should have provided this Court with a specific comparison between her treatment and that of similarly situated white, male employees. *See id.* (dismissing complaint even though plaintiff alleged that male employees were given raises and promotions in spite of her exceptional job performance); *see also Montana v. First Fed. Sav. & Loan Ass'n of Rochester,* 869 F.2d 100, 106–07 (2d Cir.1989) (requiring plaintiff to show how she was treated differently than male employees in a motion for summary judgment).

█ Title VII is not a remedy for all disgruntled employees who are members of a protected class. It should not be exploited through misuse and misapplication. *See Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d 234, 251 (S.D.N.Y.2000) (discussing the misapplication of Title VII in a motion for summary judgment); *Richardson v. Newburgh Enlarged City Sch. Dist.,* 984 F.Supp. 735, 747 (S.D.N.Y.1997) (Conner, J.) (same). Those who seeks its protection must allege and prove their entitlement thereto. In this case, plaintiff's conclusory allegations of harassment and discrimination are inadequate. Therefore, these claims are dismissed without prejudice.

## III. *Constructive Discharge*

█ A constructive discharge claim is established by showing the employer deliberately created intolerable working conditions in an effort to force the employee to resign. *See Stetson v. NYNEX Service Co.,* 995 F.2d 355, 360 (2d Cir.1993). The

most common constructive discharge cases involve scenarios where the employee is threatened with firing unless she resigns. *See Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F.Supp. 937, 947 (S.D.N.Y.1996). The Second Circuit has declined to state whether the level of conduct needed to establish constructive discharge is more egregious than that required to establish a hostile work environment. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir.2000). It has, however, stated that the mere dissatisfaction of work assignments, unfair criticism, or working conditions that can be categorized as unpleasant, do not constitute a constructive discharge. *See Stetson*, 995 F.2d at 360.

■ In this case, plaintiff alleges that she was constructively discharged by defendants through the discriminatory treatment to which she was subjected by the individual defendants (Complt.¶ 20), being compelled to take sick leave (Complt.¶ 31) and subsequently being forced to take a demotion or resign. (*Id.* ¶ 18; Complt., Ex. A.) Certain factors, such as loss of job title and reduction of salary, are important when determining whether conduct is intolerable. A demotion with a reduction in pay and loss of employee benefits, when accompanied by evidence of malicious intent, can establish constructive discharge. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161–62 (2d Cir.1998); *see also Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983) (stating that the mere dissatisfaction of assignments does not constitute a constructive discharge but specifically noting that the employee did not suffer a loss in pay or change in job title); *Godfrey v. Ethan Allen, Inc.*, No. 96–7978, 1997 WL 279933, at *4 (2d Cir. May 23, 1997) (quoting the magistrate who found that the employee did not suffer any decrease in salary and affirming summary judgment against an employee); *Hogan v. Metromail*, 107 F.Supp.2d 459, 470 (S.D.N.Y. 2000) (upholding a claim of constructive discharge because evidenced by reductions in compensation and responsibilities, as well as intimations that older people were to be forced out).

In this case, even accepting that plaintiff's demotion resulted in a loss of pay and employee benefits, plaintiff has made only conclusory allegations concerning the "discriminatory ridicule and harassment" that led to her physical illness. As stated above, an employee is not constructively discharged merely by being demoted, but rather must allege an environment so intolerable as to cause a reasonable person to resign. Discrimination combined with a demotion and loss of pay may constitute constructive discharge. However, because her discrimination allegations were vague, this Court cannot determine whether plaintiff could present evidence of such treatment as would make a reasonable person feel compelled to resign.

Plaintiff has also failed to allege that defendants deliberately made her working conditions intolerable in an effort to force her to resign. Although the Second Circuit has declined to state whether deliberateness on the part of the employer requires specific intent to force the employee to resign, it has stated that deliberate conduct requires more than mere negligence or ineffectiveness. *See Whidbee*, 223 F.3d at 74. Although plaintiff declared that she was constructively discharged as a result of defendants' conduct, she did not allege that the conditions created by defendants were part of a campaign designed to make her do so. *See Murray–Dahnir v. Lowes Corp.*, No. 98 Civ. 9057, 2000 WL 1119094, at *2 (S.D.N.Y. Aug. 8, 2000) (dismissing the complaint with leave to replead because there was no allegations of a campaign created by the employer). Plaintiff's claim of constructive discharge is therefore dismissed without prejudice.

## IV. *Retaliation*

■ Title VII prohibits an employer from discriminating against an employee who takes action in opposition to an unlawful employment practice. *See 42 U.S.C.*

§ 2000e–3(a); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 64 (2d Cir.1992). Retaliation claims are tested under the three-step burden shifting analysis set forth in *McDonnell Douglas.* A plaintiff establishes a prima facie case for retaliation by showing that: (1) she was engaged in a protected activity of which her employer was aware; (2) she suffered some disadvantageous employment action; and (3) there was a causal connection between the protected activity and the adverse employment decision. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996). The causal connection can be established directly through evidence of retaliatory animus directed at plaintiff by defendant, or indirectly by showing either that other employees engaged in similar conduct were given more favorable treatment or that the adverse action closely followed the protected activity. *See Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991); *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986). Once a prima facie case is established, the burden of production shifts to the defendant employer to "articulate a legitimate, nondiscriminatory reason for its actions." *See Kotcher,* 957 F.2d at 64 (citations omitted); *see also Shepard,* 92 F.Supp.2d at 291 (noting that even at the summary judgment stage, the burden of establishing a prima facie case is slight). If the defendant meets its burden of production, then the plaintiff must show that defendants' proffered reasons were pretextual. *See Kotcher,* 957 F.2d at 65.

Plaintiff claims she was subjected to retaliation after her attorney made a complaint to defendant Pirro (Complt.¶ 30) and after she filed an EEOC complaint. (*Id.* ¶ 29.) Plaintiff alleges that the retaliation was in the form of threatened prosecution for the alleged theft of literature (*Id.* ¶¶ 32, 34) as well as the termination from employment. (*Id.* ¶ 30.)

Plaintiff's claim that she was subjected to retaliation after she filed the EEOC complaint must fail. She filed the EEOC complaint in March, 1999 (*Id.* ¶ 9), almost one month after she was terminated on February 5, 1999. (*Id.* ¶ 21.) Thus, there is no causal connection between the filing and any adverse employment decision.

■ With respect to the complaint made by plaintiff's attorney on January 28, 1999, plaintiff has satisfied the second and third elements of her prima facie case. Plaintiff did suffer adverse employment action because after the complaint was made she was terminated. There is also some causal connection between the protected activity and the adverse employment action. An employer violates Title VII as long as a retaliatory motive played some part in the adverse action; retaliatory motive does not have to be the sole cause of the adverse action. *See Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990). Furthermore, an employer violates Title VII even if there were objectively valid grounds for the discharge. *See id.* Taking all inferences in favor of the plaintiff and following the standard set forth in *Johnson,* because the termination occurred within one week of the letter, a causal connection has been established.

■ The prima facie case fails because the complaint made to management does not constitute a "protected activity" under Title VII. It is true that a complaint made to management rather than an agency may constitute a protected activity under Title VII of which plaintiff's employer was aware. *See Kotcher,* 957 F.2d at 65 (stating that a complaint to management is a protected activity); *Barcher v. New York Univ. Sch. of Law,* 993 F.Supp. 177, 184 (S.D.N.Y.1998) (same); *see generally Sumner,* 899 F.2d at 209 (describing protected activities under Title VII). However, plaintiff must allege and prove that at the time of the complaint, she was acting under a good faith, reasonable belief that the employer had violated Title VII. *See id.* (stating that the plaintiff does not have to prove the merits of the underlying discrimination claim).

Therefore, the ultimate issue is whether plaintiff could present evidence that she was acting under a good faith, reasonable belief that defendants violated Title VII when her attorney submitted the January 28, 1999 letter. The reasonableness of plaintiff's belief is determined by the totality of the circumstances. *See Galdieri–Ambrosini v. National Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998). Taking all inferences in favor of plaintiff, when she submitted the letter she had been disciplined for a professional failure and ultimately demoted. Plaintiff's failure to adequately plead any specific facts establishing the alleged discrimination and harassment precludes this Court from determining whether plaintiff could present evidence that at the time of the letter she was reasonable in her belief that she was the subject of both discrimination and harassment. Thus, the prima facie case fails for lack of allegation of a protected activity.

Defendants argue that the letter does not constitute a protected activity under Title VII because it asserted rights of a personal nature and not matters of public concern, citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick,* the Supreme Court held that a questionnaire distributed by an employee concerning office morale was of a personal nature and not protected under the First Amendment. *See id.* at 154, 103 S.Ct. 1684. In this case, plaintiff's letter did not assert claims concerning office morale, but claims of discrimination, harassment, slander and constructive discharge. These are clearly questions of public concern.

Plaintiff's claim of retaliation is dismissed without prejudice.

### V. *State Law Claims*

A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly, as all federal claims have been dismissed, the Court exercises its discretion and dismisses all of the remaining state law claims without prejudice.

Punitive damages are not recoverable against a municipality for Human Rights violations. *See Thoreson v. Penthouse Intern. Ltd.,* 80 N.Y.2d 490, 499, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992) (stating that punitive damages are not recoverable under section 297(9) of N.Y. EXEC. LAW); *Brennan,* 67 F.Supp.2d at 378. Thus, the claim for punitive damages asserted under state law against defendant Westchester County District Attorney's Office is dismissed with prejudice.

### CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the complaint is granted without prejudice insofar as it concerns plaintiff's claims under Title VII and with prejudice as to all claims for punitive damages against defendant Westchester County District Attorney's Office as well those claims asserted against the individual defendants under Title VII. Plaintiff is granted leave to replead within 30 days her claims for sexual and racial discrimination and harassment under Title VII, as well as her claims for constructive discharge and retaliation.

SO ORDERED.