**Carol CALLAHAN, Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., and Aida Ortiz, Defendants.**

**No. 00 CIV 6542 LAK.**

United States District Court, S.D. New York.

Feb. 20, 2002.

Lai Lee Chan, Law Offices of Lai Lee Chan, for Plaintiff.

David J. Reilly, Consolidated Edison Company of New York, Inc., for Defendant Consolidated Edison.

David J. Hernandez, Law Offices of David J. Hernandez, for Defendant Aida Ortiz.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Carol Callahan, who is white, brings this action against her employer, Consolidated Edison Company of New York, Inc. ("Con Ed"), and one of her subordinates at Con Ed, Aida Ortiz, who is

Latina, pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended,[1] claiming that the defendants discriminated against her based on her race and retaliated against her for complaining about this discrimination. Callahan asserts additional state law claims against both defendants under the New York City Human Rights Law (the "NYCHRL")[2] and New York State common law and asks that this Court exercise its supplemental jurisdiction and hear those claims as well.

In a Report and Recommendation dated August 9, 2001 (the "R & R"),[3] Magistrate Judge Kevin Nathaniel Fox recommended that (1) defendant Ortiz's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(5), for insufficient service of process be denied; (2) her Rule 12(b)(6) motion to dismiss for failure to state a federal claim be granted; and (3) this Court decline to exercise supplemental jurisdiction over plaintiff's state law claims against defendant Ortiz.

There have been no objections to Magistrate Judge Fox's recommendations regarding Ortiz's Rule 12(b)(5) motion. For the reasons stated in the R & R, that aspect of the motion is denied. Plaintiff objects to the recommendations relating to the dismissal of her claims against Ortiz. For the reasons discussed below, that aspect of defendant Ortiz's motion which seeks dismissal of the Section 1981 and parallel NYCHRL discrimination claims against her is denied. That aspect which

seeks dismissal of the Section 1981 retaliation and parallel NYCHRL claims, however, is granted.[4]

## I  Background

The complaint, the allegations of which are assumed to be true for the purposes of this motion, details the professional, and by all accounts unpleasant, relationship between Callahan and Ortiz at Con Ed. When Con Ed transferred Callahan to its Bronx training facility to be the training coordinator of gas operations in April of 1998, Ortiz became one of Callahan's subordinates. According to the complaint, prior to Callahan's arrival at the Bronx facility, Ortiz announced that "she would not work for that 'fucking white bitch.'"[5] Callahan alleges that once she began her work at the Bronx facility, Ortiz would refer to her as a "stupid bitch," a "fucking cunt," and "unqualified" or "not qualified" for her position.[6] Callahan alleges that Ortiz "would loudly announce, 'Good! She's gone! Thank God! And she's not coming back!'" when Callahan would leave the room and that Ortiz "would taunt [Callahan] by speaking in Spanish" while the two worked in the same room.[7]

According to Callahan, she complained of Ortiz's behavior to many employees at Con Ed, including the senior vice president and the manager of gas operations as well as members of the EEO department.[8] The complaint alleges that Ortiz also voiced her dissatisfaction about the rela-

1.  42 U.S.C. §§ 2000e *et seq.*

2.  N.Y.C. Ad.Code § 8–107 *et seq.*

3.  2001 U.S. Dist. LEXIS 12692 (S.D.N.Y. Aug. 9, 2001).

4.  *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000); *Lee v. Overseas Shipholding Group, Inc.,* No. 00 Civ. 9682(DLC), 2001 U.S. Dist. LEXIS 10622, at *29

(S.D.N.Y. July 30, 2001); *Landwehr v. Grey Advertising, Inc.,* 211 A.D.2d 583, 583, 622 N.Y.S.2d 17, 18 (1st Dept.1995).

5.  Cpt. ¶ 18.

6.  *Id.* ¶¶ 19–20.

7.  *Id.* ¶ 27.

8.  *Id.* ¶ 36.

tionship. Specifically, Callahan alleges that Ortiz: (1) wrote a letter to two union personnel in which she claimed that "Mrs. Callahan is sneaky, vicious and without any value system. In her actions Mrs. Callahan has been criminal and with that has proven not to embrace Con Edison's Mission Statement, Code of Conduct, and practice improper ethical behavior;"[9] (2) sent an email to a co-worker in which she stated that Callahan "will 'get what's coming to her;'"[10] (3) wrote a memorandum dated November 15, 1999 in which she claimed that Callahan was failing to perform certain of her job responsibilities relating to Con Ed's asbestos license;[11] (4) repeated these allegations in an April, 2000 letter to the Con Ed ombudsman; (5) stated "That bitch better watch her back. She'll get what's coming to her" to the party at the other end of a telephone conversation;[12] (6) sent an email to Con Ed employees in which she stated that Callahan had a "squalid" and "unprofessional" attitude;[13] and (7) "brazenly broadcasted, 'This fucking Callahan—you people better duck because the bullets will start flying!'"[14]

Callahan and Ortiz were not alone in complaining about the situation. A letter signed "the friends of Ms. Ortiz" allegedly was sent to Con Ed's chairman.[15] It accused Callahan of being "prejudiced" and of harassing Ortiz.[16] An additional letter, signed "A Concerned Employee of CON ED" allegedly was sent to the Con Ed's chairman and chief operating officer.[17] This letter informed them that the situation at the Bronx facility had "almost become a race riot between the whites and Hispanics."[18] Finally, Callahan asserts that she received two anonymous letters. One was left at her computer terminal at work on or about December 21, 1998, and the other was received by Callahan through the U.S. mail on or about January 20, 1999.[19] Although the complaint sets forth no factual basis for the belief, Callahan alleges that both letters were written by Ortiz.

Callahan alleges that she sought a job transfer to a Staten Island facility in February 2000. She alleges that she was told there was no job position available on Staten Island, but that "soon thereafter" Con Ed placed newspaper advertisements seeking applicants for positions on Staten Island. In July 2000, Callahan allegedly applied for a Con Ed job position on Staten Island and was denied the position.

In August 2000, Callahan filed this lawsuit. Ortiz initially proceeded *pro se* and correspondence she sent to the court before she was represented by counsel was construed broadly to constitute this motion to dismiss. Magistrate Judge Fox recommended that the Court grant the motion insofar as it sought dismissal of the Sec-

9. *Id.* ¶ 28.

10. *Id.* ¶ 31.

11. *Id.* ¶ 33.

12. *Id.* ¶ 29.

13. *Id.* ¶ 21.

14. *Id.* ¶ 38.

15. *Id.* ¶ 23.

16. *Id.*

17. *Id.* ¶ 32.

18. *Id.*

19. One letter allegedly stated "You better keep your mouth shut you bitch before somebody shuts it for you. You'll get more trouble than you can handle. Got it?" *Id.* ¶ 24(a). The other allegedly stated "You better shut your mouth. This is your last warning." *Id.* ¶ 26(a).

tion 1981 claims.[20] The Court now turns to Callahan's objections to this recommendation.

## II Discussion

For purposes of Ortiz's Rule 12(b)(6) motion, the Court must accept as true all of Callahan's well-pleaded factual allegations and consider those facts in the light most favorable to Callahan, the non-moving party.[21] This Court may grant Ortiz's motion to dismiss only if "it appears beyond a doubt that [Callahan] can prove no set of facts in support of [her] claim which would entitle her to relief." [22]

### A. Callahan's Discrimination Claim Against Ortiz

Although Callahan brought claims against Con Ed pursuant to both Title VII and Section 1981, her civil rights action against Ortiz is limited to claims made pursuant to Section 1981 because Section 1981 in some circumstances provides for individual liability on the part of nonemployers while Title VII does not.[23] It provides, in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white people.... For the purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." [24]

In general, to state a *prima facie* Section 1981 case, Callahan must allege: (a) that she is a member of a particular race,[25] (b) an intent to discriminate on the basis of that race by the defendant, and (c) that the discrimination interfered with her right to make and enforce her contract with Con Ed.[26] She may satisfy the final prong of the *prima facie* case by alleging direct adverse employment action, such as a firing, or a hostile work environment.[27] To state a Section 1981 claim against Ortiz, Callahan also must allege some causal link between racially motivated behavior *by Ortiz* and an adverse employment action

---

**20.** R & R, 2001 U.S. Dist. LEXIS 12692.

**21.** *E.g., Dean v. Westchester County District Attorney's Office*, 119 F.Supp.2d 424, 427 (S.D.N.Y.2000).

**22.** *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994).

**23.** *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.2000) (holding that individuals may be held liable under Section 1981); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").

**24.** 42 U.S.C. § 1981(a) (2000).

**25.** Section 1981 proscribes purposeful racial discrimination, regardless of the plaintiff's race. *See, e.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 387, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

**26.** *See, e.g., Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260–61 (2d Cir.2000); *Olumuyiwa v. Harvard Prot. Servs., Inc.*, No. 98–CV–5110 (JG), 2000 WL 620202, at *5 (E.D.N.Y. May 12, 2000).

**27.** *Whidbee*, 223 F.3d at 69; *see also Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997) (noting that the factual basis for the hostile work environment supported, *inter alia*, both Title VII and Section 1981 claims). Section 1981 claims are analyzed under the same standards as Title VII claims. *Whidbee*, 223 F.3d at 69 (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 n. 2 (7th Cir.1999)).

within the meaning of Section 1981.[28]

The contours of individual liability under Section 1981 have not been explored fully by courts in this circuit. Most that have considered the liability of individual defendants have done so with regard to defendants possessing some sort of supervisory or ownership power.[29] While the Second Circuit has not expressly held that an individual must be a supervisor to be amenable to Section 1981 liability, as is suggested by the R & R,[30] in all instances in which an individual has been held liable, the individual was some sort of supervisor.[31] Nevertheless, the possibility that a plaintiff might establish some causal link between an individual defendant and a discriminatory action that violates Section 1981, even if that individual defendant was the plaintiff's subordinate, perhaps cannot be excluded.[32]

■ Assuming *arguendo* that a supervisor may make out a Section 1981 claim against a subordinate, Callahan has not connected Ortiz to any direct adverse employment action against her. She complains of Con Ed's failures to provide her with a position on Staten Island. To the extent that the denial of such a position was an adverse employment action, however, the complaint alleges no causal relationship between Ortiz's conduct and Con

Ed's action. She has, however, alleged facts sufficient to permit a jury to infer that Ortiz's actions toward her created a race-based hostile work environment.

A workplace is hostile if it is "permeated with discriminatory intimidation that [is] sufficiently severe or pervasive to alter the conditions of [the] work environment." [33] A hostile work environment claim will succeed only when the allegedly discriminatory conduct is so "severe or pervasive" that it creates an "objectively hostile or abusive work environment" that the victim "subjectively perceives ... to be abusive." [34]

The Court assumes for the purposes of this motion that Callahan subjectively perceived a hostile work environment. The question remains, however, whether the allegations of the complaint are sufficient to form the basis of a finding of an objectively hostile or abusive work environment based on race.

Callahan's preliminary statement that "[a]ll of said discriminatory and other wrongful acts were severe, pervasive, continuous, intentional, malicious, and egregious" [35] does not suffice to allege a discriminatory hostile work environment. Such " 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

---

**28.** *See Whidbee,* 223 F.3d at 75; *Evans v. Port Authority of N.Y. and N.J.,* No. 00 Civ. 5753(LAK), 2002 WL 77074, at *1 (S.D.N.Y. Jan. 22, 2002); *Olumuyiwa,* 2000 WL 620202, at *5.

**29.** *See, e.g., Whidbee,* 223 F.3d at 65 (noting that the individual defendants were the owners of the restaurant at which the plaintiffs were employed).

**30.** *See* R & R, 2001 U.S. Dist. LEXIS 12692, at *12–13.

**31.** *See Hicks v. IBM,* 44 F.Supp.2d 593, 597 (S.D.N.Y.1999) ("[I]ndividual liability under

§ 1981 is not without limits. In each of the cases that have allowed individual liability, the individuals have been supervisors who were personally involved in the discriminatory activity.").

**32.** *See Evans,* 2002 WL 77074, at *2.

**33.** *Richardson v. New York State Dep't of Corr.,* 180 F.3d 426, 436 (2d Cir.1999).

**34.** *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**35.** Cpt. ¶ 12.

dismiss.' "[36] Nevertheless, a reasonable trier of fact might infer that Ortiz had a hand in the anonymous letters. These, coupled with the correspondence for which Ortiz plainly was responsible, the torrent of abuse she heaped on Callahan, and her clear racial animus, are enough at this stage to preclude a conclusion that Callahan will be unable to make out a *prima facie* case of a racially hostile work environment attributable to Ortiz.

While it is a sad day when an interpersonal conflict such as this one finds its way into federal court, the Court must deny Ortiz's motion to dismiss Callahan's Section 1981 discrimination claim against her.[37]

## B. Retaliation

In addition to prohibiting discrimination based on race, Section 1981 protects the right of employees to voice complaints regarding treatment that they, in good faith, believe violated their rights under Section 1981 by prohibiting retaliation in the wake of such complaints. To establish a *prima facie* case against Ortiz for retaliation under Section 1981, Callahan must show that: (a) Callahan was engaged in a protected activity, (b) Ortiz was aware of that activity, (c) she suffered an adverse employment action, and (d) there was a causal connection among the protected ac-

tivity, Ortiz's action, and the adverse employment action.[38]

Callahan alleges that she complained to Con Ed management about Ortiz's behavior several times and therefore satisfies the first prong. But she has failed adequately to allege the remainder of the *prima facie* case. She has not alleged that Ortiz had any actual or constructive knowledge of her complaints to Con Ed management. Nor has she alleged a causal connection between her complaints and any adverse employment action to which Ortiz can be linked. Callahan therefore has failed to state a Section 1981 retaliation claim against Ortiz and the motion to dismiss this claim is granted.[39]

## III Conclusion

Defendant Ortiz's motion to dismiss is granted to the extent that the Section 1981 and the NYCHRL retaliation claims against her are dismissed and is denied in all other respects.

SO ORDERED.

---

**36.** *Dean,* 119 F.Supp.2d at 428 (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997)).

**37.** Callahan also has alleged facts sufficient to permit a jury to find that Ortiz actually participated in discriminatory conduct that violated the NYCHRL. In consequence, Ortiz's motion to dismiss the NYCHRL discrimination claim against her is denied.

**38.** *See, e.g., Tomka,* 66 F.3d at 1308 (outlining *prima facie* case for retaliation under Title VII).

**39.** Callahan's NYCHRL retaliation claim suffers from the same defect as her Section 1981 retaliation claim. Callahan has failed to make out a *prima facie* case for retaliation under the NYCHRL because she has alleged neither knowledge of her protected activity on the part of Ortiz nor a causal connection between her protected activity and an adverse employment action. Ortiz's motion to dismiss the NYCHRL retaliation claim against her therefore is granted.