**Uma ASHOK, Plaintiff,**

**v.**

**Jo Anne BARNHART, Commissioner of Social Security Administration, Defendant.**

**No. 01–CV–1311 (TCP).**

United States District Court, E.D. New York.

Oct. 30, 2003.

David B. Feldman, Leeds Morelli & Brown, P.C., Carle Place, NY, Peter M.J. Reilly, Peter Reilly Esq., North Babylon, NY, Appen P. Menon, Menon & Posner, New York City, for Plaintiff.

Susan L. Riley, United States Attorney's Office, Eastern District of New York, Central Islip, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Jo Anne Barnhart, Commissioner of the Social Security Administration ("SSA" or "Defendant"), moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the Complaints of Plaintiff Uma Ashok ("Ashok" or "Plaintiff"). The Court heard oral argument on June 27, 2003.

This is an employment discrimination case in which Plaintiff originally filed two separate actions. In CV–01–1311, Plaintiff claims that beginning in November 1992 she was subjected to a hostile work environment because of both her national origin and her religion and that she was retaliated against for filing several related EEOC complaints and grievances. Plaintiff alleges that additional incidents of dis-

crimination, harassment and retaliation occurred between January 11 and April 27, 1993.

In CV–01–6708, Plaintiff similarly claims that acts of discrimination and harassment on the basis of her national origin and religion took place against her in November 1994. At oral argument the parties agreed to consolidate the two separate actions into one, 01–CV–1311.

For the following reasons, Defendant's motion is **GRANTED** as to Plaintiff's claims of a hostile work environment claims and **DENIED** as to Plaintiff's claims of retaliation.

## BACKGROUND[1]

### A. General Background

Plaintiff is of Asian Indian national origin and is of the Hindu faith. She is currently employed with the SSA as a claims representative. (Riley Decl., Ex. 1 at 15, 70.) Plaintiff has been employed by the SSA since March 1980 and has worked in SSA's Lindenhurst District Office since October 1987. (*Id.*) As a claims representative, Plaintiff collects information to determine applicants' eligibility for disability, retirement, survivor and Medicare benefits. (*Id.* at 33–34.) Plaintiff is also the guardian of her disabled son, Ajay Ashok, and the representative payee of his disability payments. (Riley Decl., Ex.1 at 104).

### B. Alleged Evidence of Hostile Work Environment and Retaliation

Plaintiff claims subjection to a hostile work environment due to her national origin and religion, beginning on or about November 1992. Plaintiff also claims she suffered retaliation for filing several EEOC complaints and grievances. Plain-

tiff does not clearly state which actions support each claim, and many of her allegations are cited to support both claims.

### 1. Hostile Work Environment Claim

Certain of Plaintiff's allegations more clearly relate to her claim of a hostile work environment than others. Specifically, Plaintiff claims that on or about November 19, 1992, she found the words "Bloody Indian" scrawled on her jacket while it hung in an office closet. (Pl.Dep.122, 124.) Plaintiff also alleges that the next day, co-worker Carolyn Starr threatened to "break her legs." (Pl.Dep.121–125.) Plaintiff further contends that she suffered harassment in February 1993 when a Valentine's Day poster placed in her office lunchroom asked, "Uma loves ?" (Pl. Dep. 118; Riley Decl. Ex. 2.)

Plaintiff attempts to support her hostile work environment claim with her supervisor Dolores Guidice's ("Guidice") "memory joggers" or notes regarding employees. Plaintiff cites Guidice's note dated February 25, 1993, which states that a colleague of Plaintiff said "she was very uncomfortable at the meeting yesterday [and] wanted me to know that [Plaintiff] is very very sick," and that the colleague said "she pictures [Plaintiff] coming in with a bomb, a gun or some sort of violence." (Pl.Ex.9.) The note contains no statements regarding Plaintiff's nationality or religion. (*Id.*)

Plaintiff claims that discriminatory animus was directed toward her son when the SSA tried to remove her as the representative payee for her disabled adult son. (Pl.Ex.18) As evidence, Plaintiff claims that the cover of her son's SSA file was marked with the statement, "Advise Management Of Any Activity On This Case."

---

1. The facts are derived from the parties' Local Rule 56.1 Statements and are not in dispute, except as noted.

(Pl.Ex.17.) Plaintiff also claims that while SSA reviewed her son's file only four times between 1975 and 1990, the SSA subsequently reviewed his file four times in 1992 alone. (*Id.*)

Plaintiff claims subjection to additional acts of harassment between January 11 and April 27, 1993. Plaintiff contends that during this time period:

(1) SSA improperly accused of her of mishandling claims, and that supervisors made these accusations to retaliate for Plaintiff's filing of grievances and complaints. Plaintiff argues that SSA superiors ordered her to take actions in violation of SSA policies, while Defendant disagrees with Plaintiff about the propriety of the ordered actions and states that any related reprimands represent routine supervisory responses to employees who do not follow procedures.

(2) SSA improperly reprimanded Plaintiff even though she acted "by the book" when she requested leave to testify at a union grievance. Plaintiff claims that her supervisor directed her to request administrative leave to appear for a grievance meeting and offers a statement by her union president that he "never had to sign [an administrative leave request] in the past." Plaintiff further claims that SSA refused her compensatory religious leave in 1991 and also that she had to file a grievance in order to attend Asian Pacific American Conference.

#### 2. *Retaliation Claim*

Plaintiff claims SSA retaliated against her for filing six EEOC complaints and two union grievances between March 1992 and June 1995 by denying her 18 to 22 promotions. (Pl.Ex.4.)

Plaintiff claims she was denied these promotions because of low evaluations, while Defendant disputes that Plaintiff received poor evaluations. Plaintiff concedes that she always received rankings of at least "satisfactory" on each performance evaluation, but argues that this rating represents a lower rating than she deserved and that this ranking prevented her from receiving promotions. (Riley Decl. Ex. 1 at 69, 114.) Defendant argues that Plaintiff has been a GS–11, the highest grade available for an SSA claims examiner, since 1993. (Riley Decl. Ex. 1 at 23). Plaintiff responds that similarly-situated claims representatives have been promoted to higher grades and proposes to offer evidence of such promotions at trial. (Pl. Decl.Ex. 11).

Plaintiff submitted a Stipulation dated July 25, 1997, whereby Defendant and Plaintiff agreed to dismiss one of her EEOC complaints in exchange for Defendant counseling Plaintiff on obtaining a promotion. (Pl.Ex.5.) Plaintiff provided a list of eighteen positions for which she applied but was ultimately not selected and also submitted her resume, which shows that she earned both a college degree and some graduate-level credits. (Pl.Ex.4.) Plaintiff argues that despite the career counseling agreed to in the Stipulation, her credentials, and her applications for various positions, she was not promoted, and that her failure to be promoted was predicated upon discriminatory reasons.

#### C. Procedural History

Plaintiff first communicated with an EEOC counselor on February 24, 1993, and filed a formal complaint of discrimination the following May 11th. (Riley Decl. Ex. 3.) In her administrative complaint, Plaintiff alleged harassment by her co-workers on three occasions between November 1992 and February 1993 and that, between January 1993 and April 1993, her supervisor made derogatory remarks about her, ordered her to take action in

violation of SSA procedures, singled her out for "by the book" treatment and rejected or deleted several of Plaintiff's disability claims. (*Id.*) Plaintiff made no claims in her EEOC complaint of a denial of promotions based on low performance evaluations, of receiving improper reprimands or of her son being discriminated against as a recipient of SSA disability benefits. Following a final decision from SSA dated December 11, 2000, Plaintiff filed Civil Action No. CV–01–1311 on or about March 5, 2001.

On June 9, 1995, Plaintiff filed an administrative EEOC complaint claiming she suffered retaliation for filing her original complaint, as evidenced by a November 25, 1994, search of her desk and the related follow-up meeting. (Riley Decl. Ex. 4.) Plaintiff made no claim, as she does in this action, of discrimination in connection with the alleged efforts of SSA to remove her as representative payee for her disabled son. (*Id.*)

Following a final decision from SSA dated July 13, 2001, Plaintiff filed Civil Action No. CV–01–6708 on or about the following October 11th.

### D. Plaintiff's Claims

Civil Action No. CV–01–0311 contains five claims. The first four claims are more accurately described as one claim of a hostile work environment. The fifth claim alleges retaliation for Plaintiff's protected activities, as evidenced by Defendant's failure to promote Plaintiff.

Civil Action No. CV–01–6708 alleges twelve claims. The first six claims are more accurately described as one claim of retaliation based on Defendants' search of Plaintiff's desk, which Plaintiff claims was done to embarrass her for filing a union grievance. The Seventh Claim alleges, as evidence of discriminatory animus directed towards Plaintiff's son, Defendant's alleged

attempt to remove Plaintiff as representative payee for her son's benefits. The remaining four claims are best read as a single retaliation claim based on alleged disparate treatment evidenced by the "memory joggers" and the search of Plaintiff's desk.

### DISCUSSION

### A. Summary Judgment

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Castle Rock Entm't, Inc. v. Carol Publ'g Group,* 150 F.3d 132, 137 (2d Cir.1998). The party seeking summary judgment bears the burden of demonstrating that no genuine factual dispute exists. *See Adams v. Department of Juvenile Justice,* 143 F.3d 61, 65 (2d Cir.1998).

Material facts are those which, under the applicable substantive law, may affect the outcome of the case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (stating it is "the substantive law's identification of which facts are irrelevant that governs"). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505. At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sim v. New York Mailers' Union Number 6,* 166 F.3d 465, 469 (2d Cir.1999)(quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "When the moving party has carried its burden under Rule 56(c), its. opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (footnote and internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505 (internal citation omitted).

## B. Hostile Work Environment

It is perhaps appropriate to note at the outset that the Court has attempted to analyze the incidents of discriminatory conduct alleged in this case in view of the times in which they sequentially occurred. In contrast, in her memorandum, Plaintiff attempts to create an impression of a unified, temporally-related whole. However, the time-line in which these incidents took place was not compressed; the incidents took place over a long period of time, and it is fair to analyze these events in the form and position in which they occurred, rather than attempt to create a false impression of a cohesive, unified and pervasive hostile work environment.

### 1. Legal Standard

■ To prevail on a hostile work environment claim, a Plaintiff must prove both that the workplace is permeated with dis-

criminatory intimidation, ridicule and insult that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002) (*citing Perry v. Ethan Allen Inc.,* 115 F.3d 143, 149 (2d Cir.1997)). "This test has objective and subjective elements; the misconduct shown must be 'severe or pervasive enough to create an objectively hostile environment' and the victim must also subjectively perceive that environment to be abusive.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ In determining whether an environment is sufficiently hostile to support relief under Title VII, courts consider a non-exclusive list of factors including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with Plaintiff's work; and (5) what psychological harm, if any, resulted." *Richardson v. New York State Dep't. of Correctional Service,* 180 F.3d 426, 437 (2d Cir.1999) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). A single act is sufficient only if it "can and does work a transformation of the Plaintiff's workplace." *Alfano,* 294 F.3d at 374.

■ Once Plaintiff establishes the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer. When the harasser is a supervisor, the employer is presumed to be liable. *See Faragher v. Boca Raton,* 524 U.S. 775, 789–91, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). However, when the harassment is attributable

to a co-worker, rather than a supervisor, the employer will only be held liable if the Plaintiff can demonstrate that the company "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995) (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 63 (2d Cir.1992)). However, an employer with knowledge of a hostile work environment must take steps to remedy the problem. *Id.*

### 2. The Plaintiff Can Not Establish a Claim for a Hostile Work Environment

■ Applying the legal standards to the facts of the instant action, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim should be granted. On the first element of a hostile work environment claim, that the workplace is permeated with discriminatory intimidation, ridicule and insult of a sufficient severity, the standard is not met.

The Second Circuit holds that isolated remarks and epithets are insufficient to establish a hostile work environment. In *Schwapp v. Avon*, 118 F.3d 106, 110 (2d Cir.1997), the Court held that "for racist comments, slurs and jokes to constitute a hostile work environment, there must be ... a steady barrage of opprobrious racial comments," and that "to establish a hostile atmosphere ... Plaintiffs must prove more than a few incidents of racial enmity" (internal citations and quotation marks omitted). *See also Kotcher*, 957 F.2d at 62 (stating "the incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."); and *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 5 (2d Cir.1995) (stating "Title VII requires that incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive").

Furthermore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of unemployment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (internal quotations omitted). In addition,

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise federal courts will become a court of personnel appeals.

*Alfano*, 294 F.3d at 377.

In *Alfano*, the Second Circuit held that improper reprimands for alleged violations of firm policy are insufficient to establish a hostile work environment. In discussing alleged improper reprimands, the Second Circuit held that "there is nothing in the record to indicate that [Defendant's] warning was intended to undermine [Plaintiff], that it was unreasonably indulgent under the circumstances ... or that it deviated from ordinary practice." *Id.* at 376.

Here, Plaintiff's claims are insufficient. The writing of the term "Bloody Indian" on Plaintiff's jacket is the only claim of an attack upon her nationality. While undeniably offensive, this act is not the type of single event, over the course of a 23–year period of employment, that changes a work place environment. Therefore, this act is insufficient to prove a hostile work environment. Further, this act may not reasonably be imputed to Plaintiff's employer.

Next, Plaintiff's claim that she was ridiculed and humiliated by a 1993 Valentines

Day poster asking "Uma loves ?" may not reasonably be said to interfere with Plaintiff's work or to cause her psychological harm.

The other examples that Plaintiff offers as evidence of a hostile work environment, including Guidice's rejection of some of Plaintiff's disability claims from further processing, Plaintiff's being made to seek permission to attend an administrative hearing and Plaintiff's slight reprimand for having files stored above her desk, are insufficient acts to prove a hostile work environment, as there is no linkage between them and the claimed grounds for discrimination—her national origin and religion. The acts are also not of sufficient magnitude to meet the applicable standard of severe intimidation, ridicule and insult.

Accordingly, Plaintiff's hostile work environment claims are DISMISSED.

## C. Retaliation Claims

### 1. The Retaliation Claim Should Not Be Dismissed Due to a Failure to Exhaust Administrative Remedies

A district court's jurisdiction to hear Title VII claims only extends to those that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to the conduct alleged in the EEOC complaint. *See Stewart v. Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985). The Second Circuit recognizes three situations where claims not alleged in an EEOC charge are sufficiently similar to the allegations in the charge that it would be unfair to bar such claims in a civil action. The Court refers to these claims as "reasonably related" to the allegations in the EEOC charge.

One type of reasonably related claim is one alleging retaliation by an employer against an employee for filing an

EEOC charge. *See Malarkey v. Texaco Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993). As stated in *Butts v. New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1402 (2d Cir.1993), "requiring a Plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on the Plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." The applicable statute also does not mandate that a Plaintiff must initiate contact with an EEOC claim within 45 days of the act, if there is evidence that the Plaintiff did not know of this time limitation. *See* 29 C.F.R. § 1614.105(a)(2).

Defendant argues that the retaliation claim should be dismissed because Plaintiff failed to raise the retaliation claim through the EEOC proceedings. However, as noted above, the claim of retaliation is specifically cited as an exception to rule that district courts may only hear Title VII claims that are included in an EEOC charge. Defendant's argument is also weakened by the fact that no evidence is proffered that the Plaintiff did indeed know of this limitation, as required by § 1614.105.

Accordingly, Plaintiff's claim of retaliation should not be dismissed for failure to exhaust administrative remedies.

### 2. The Plaintiff May Be Capable of Establishing a Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, Plaintiff must show (1) that she was engaged in a protected activity under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the Plaintiff and (4) a causal connection between the adverse action and the protected activity. *See*

*Holtz v. Rockefeller & Co. Inc.*, 258 F.3d 62, 79 (2d Cir.2001).

■■■ A causal connection between the adverse action and the protected activity is established where a Plaintiff shows "(1) direct proof of retaliatory animus directed against the Plaintiff, (2) disparate treatment of similarly situated employees, or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. New York City Health and Hosps. Corp.*, 160 F.Supp.2d 601, 604 (S.D.N.Y.2001). In order for temporal proximity to establish causality, the intervening period must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

■■■ Although the Second Circuit does not define how long "very close" is,[2] the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) (passage of three months too long to establish retaliation for an EEOC complaint); *Lambert v. New York State Office of Mental Health*, 2000 WL 574193 at *9–10 (E.D.N.Y. Apr. 24, 2000), *aff'd*, 22 Fed.Appx. 71, 2001 WL 1511777 at *1 (2d Cir.2001) (passage of five months too long to establish retaliation for an EEOC complaint); *Castro v. Local 1199, Nat'l Health & Human Services Employees Union*, 964 F.Supp. 719, 729 (S.D.N.Y.1997) (passage of one year too long to establish retaliation for an EEOC complaint); *Lynk v. Henderson*, 2000 WL 178859 at *4 (S.D.N.Y. Feb. 15, 2000) (passage of three years too long to establish retaliation for an EEOC complaint).

The burden shifting analysis used in Title VII discrimination claims also applies to Title VII retaliation claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003). Under *McDonnell Douglas*, once a Plaintiff establishes a prima facie case, Defendant is required to offer a legitimate, non-discriminatory rationale for its actions. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000).

Here, Plaintiff argues that Defendant retaliated by failing to promote her in response to her filing of EEOC complaints and union grievances. The first three elements of the retaliation claim are not in dispute: the filing of EEOC claims or union grievances are protected activities under Title VII, Defendant was aware that Plaintiff filed these grievances and Defendant subsequently denied Plaintiff's applications for promotions. The only element in dispute is the causal connection between the denial of Plaintiff's promotion applications and the filing of her grievances.

Plaintiff offers no proof of retaliatory animus and no evidence of disparate treatment of similarly-situated employees. Plaintiff must therefore successfully show that the failure to promote her occurred in close temporal proximity to the filing of her EEOC complaints and union grievances. Over an eleven-year period, Plaintiff filed six EEOC complaints and two union grievances while contemporaneously being rejected for 22 promotions. Such a combination of protected activities and alleged retaliatory acts raises suspicions of a

---

2. *See Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir.2001) (stating "This court has not drawn a bright line to define the outer limits beyond which a tempo-ral relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action").

causal relationship. However, the dates of most of her grievances and her promotion rejections do not correspond closely enough in time to be related.[3]

■ All but one of Plaintiff's job applications occurred in excess of one year since Plaintiff's last federally protected activity in July 1995. As such, all applications submitted over a year from the date of Plaintiff's sixth and final EEOC complaint are irrelevant to the determination of whether Defendant retaliated against Plaintiff by denying her applications. See *Hunter v. Saint Francis Hosp.*, 281 F.Supp.2d 534, 547 (E.D.N.Y.2003) (stating that based "on the fact that Plaintiff's work evaluations and disciplinary record were consistent both before and after he filed his retaliation claim, this Court finds that Plaintiff has not established a causal relationship between the protected activity and his evaluations/disciplinary record").

■ However, Plaintiff's September 1995 application for the position of Paralegal Specialist occurred roughly two months after Plaintiff's filing of an EEOC complaint on July 18, 1995.[4] A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related. Accordingly, Plaintiff satisfied her burden of making a prima facie showing of the elements of a claim of retaliation.

Under *McDonnell Douglas*, Defendant must now articulate a legitimate, nondiscriminatory reason for SSA's rejection of her application. To date, Defendant has not done so and, accordingly, Defendant's motion for summary judgment is DENIED as to Plaintiff's claims of retaliation.

## CONCLUSION

For the reasons stated above, summary judgment is GRANTED as to the claims of a hostile work environment and DENIED as to the claims of retaliation.

SO ORDERED.

## Appendix A

| Date | Position Applied For | Protected Activity |
| --- | --- | --- |
| 7–24–90 | Supervisory Training Program | |
| 7–30–90 | Beneficiary Services Specialist Grade | |
| 8–30–90 | Paralegal Specialist | |
| 8–90 | Area Analyst Social Insurance | |
| 10–92 | | First Union Grievance |
| 2–16–93 | | Second Union Grievance |
| 2–21–03 | | First EEOC Complaint |
| 9–16–93 | | Second EEOC Complaint |
| 3–1–94 | | Third EEOC Complaint |
| 5–19–94 | | Fourth EEOC Complaint |
| 12–9–94 | | Fifth EEOC Complaint |
| 7–18–95 | | Sixth EEOC Complaint |
| 9–95 | Paralegal Specialist | |
| 12–06–97 | Adjudication Officer/EEO Specialist | |
| 2–04–98 | Social Insurance Specialist | |
| 7/21/98 | Social Insurance Specialist | |
| 1–21–99 | Leadership Development Program | |

3. Attached as Appendix A is a chronological comparison of the Plaintiff's protected activities and her unsuccessful job applications.

4. Unlike the detailed evidence provided by Plaintiff of her other applications, Plaintiff fails to provide similarly detailed information regarding her September 1995 application, such as the exact date of her application, or any documentary evidence to corroborate her application, such as a cover letter.

| | |
|---|---|
| 2–17–99 | NY Career Enrichment Program |
| 10–02–99 | Social Insurance Specialist |
| 10–05–99 | Paralegal Specialist |
| 10–11–99 | Management Operations |
| 10–99 | Paralegal Specialist |
| 10–99 | Paralegal Specialist |
| 4–03–00 | Social Insurance Specialist |
| 4–00 | EEOC, SSA Grade |
| 4–00 | Social Insurance. Specialist/N.Y. Career Enrichment |
| 1–21–01 | Social Insurance Specialist |
| 7–01 | NY Career Enrichment Program |