Charles F. TEKULA, Jr.,Plaintiff,

v.

**BAYPORT–BLUE POINT SCHOOL DISTRICT, Richard Curtis, Gerald M. Doroski, Defendants.**

No. 02–CV–5146(ADS)(ARL).

United States District Court, E.D. New York.

Dec. 15, 2003.

Charles F. Tekula, Jr., Moriches, NY, pro se.

Cooper, Sapir & Cohen, P.C., Melville, NY (David M. Cohen, of counsel) for defendants.

## MEMORANDUM AND DECISION OF ORDER

SPATT, District Judge.

This action arises out of claims by the *pro se* plaintiff Charles F. Tekula ("Tekula" or the "plaintiff") against his former employer the Bayport Blue–Point School District ("School District"), the Superintendent of the School District Richard Curtis ("Curtis"), and the Plant Facilities Director for the School District Gerald M. Doroski ("Doroski"), (collectively, the "defendants"). The plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2(e) *et seq.* and the New York State Human Rights Law, New York Executive Law ("NYSHRL"), § 290 *et seq.*, alleging that the defendants terminated his employment and retaliated against him for opposing discrimination in the workplace. The amended complaint also contains claims under 42 U.S.C. §§ 1981 and 1983 as well as a claim for intentional infliction of emotional distress. Presently before the Court is a motion by the defendants to dismiss the federal causes of action and the claim for intentional infliction of emotional distress pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ("Fed. R. Civ.P."). Also before the Court is the plaintiff's motion for sanctions against the defendants and their attorneys pursuant to Rule 11.

## I. BACKGROUND

### A. Factual Background

The facts are taken from the amended complaint filed on January 2, 2003 unless otherwise noted. On September 21, 1999, the School District hired the plaintiff as its head custodian based upon a civil service promotional test. At the time of his hiring, the plaintiff was also employed on a full-time basis by the Suffolk County Community College ("SCCC"). With the permission of Doroski, the plaintiff maintained both positions concurrently. The plaintiff alleges that from the date of his hiring until December, 1999 his work record with the School District was "exemplary" and his attendance record was "impeccable." Am. Compl. ¶ 7.

Tekula alleges that in December, 1999 Curtis communicated with Fritzi Rohl ("Rohl"), the Human Resources Director at SCCC. These alleged conversations were in regards to the plaintiff's activities on behalf of minorities and other protected class employees at SCCC. Following this communication, the plaintiff alleges that Curtis requested that he resign from his position with SCCC or that his employment with the School District would be terminated though it is not clear from the amended complaint if Tekula did, in fact, resign. In addition, the plaintiff alleges that after this communication, Doroski repeatedly entered "false and derogatory" information into his permanent personnel file. Am. Compl. ¶ 9.

In January, 2000, Doroski and Susan Bergman ("Bergman"), the Principal of the Sylvan Avenue Elementary School, requested that the plaintiff give a written warning to Jose Toledo ("Toledo"), a night custodian for the School District. Toledo is a "dark skinned Hispanic" who spoke English "with a very heavy accent." Am. Compl. ¶ 8. Toledo worked under the plaintiff's direct supervision. The proposed warning was based on teachers' complaints that Toledo cleaned the classrooms before the teachers left for the day and, in the process, attempted to engage the teachers in conversation. The plaintiff informed Doroski and Bergman that giving such a warning to Toledo would be a mistake because he believed that these complaints were based upon the fact that Toledo spoke with an accent that required an increased level of attention to understand.

The plaintiff alleges that in response to his expression of this opinion, Doroski placed a written memorandum in his permanent personnel file which falsely characterized the incident to make him appear "incompetent and insubordinate." Am. Compl. ¶ 8.

On or about January 26, 2000, Doroski gave the plaintiff a letter that was written by Curtis that informed Tekula that his employment with the School District would be terminated as of February 4, 2000. The plaintiff claims that his termination was in retaliation "for his activities on behalf of protected class employees," Am. Compl. ¶ 10, and because he "opposed discriminatory practices in the workplace." Am. Compl. ¶ 3.

## B. Procedural Background

On March 18, 2000, Tekula filed a complaint of discrimination with the New York State Division of Human Rights (the "NYSDHR") who also accepted that complaint on behalf of the Equal Employment Opportunity Commission (the "EEOC"). In particular, that complaint alleged (1) that Tekula was terminated because of his refusal "to carry out instructions that would be discriminatory against an employee," and (2) that the defendants retaliated against Tekula because he had a complaint pending with the NYSDHR against a previous employer.

By letter dated, June 21, 2002, the EEOC issued a letter (the "right-to-sue letter") to Tekula advising him of his right to pursue the action by filing a private suit within 90 days from its receipt. The plaintiff alleges that he received this letter on June 28, 2002. On September 23, 2002, within 90 days from the date he received this letter, Tekula commenced this action by filing the complaint with the Court. However, Tekula failed to serve the complaint on the defendants. Rather, on January 2, 2003, Tekula filed an amended complaint with the Court. On January 6, 2003, the plaintiff served the amended complaint on the defendants.

The defendants now move to dismiss the federal causes of action and the claim for intentional infliction of emotional distress

pursuant to Rule 12(b)(6). In support of their motion, they argue that (1) the plaintiff's Title VII claims are barred by the 90 day statute of limitations; (2) there is no individual liability under Title VII; (3) the plaintiff's Section 1981 and 1983 claims are legally insufficient; and (4) the cause of action for intentional infliction of emotional distress is time barred.

Also before the Court is the plaintiff's "Motion for Sanctions" against the defendants and their counsel. The plaintiff claims that "none of the arguments made or legal authorities relied on by [the] defendants could be reasonably construed to lead to the legal conclusions they assert, nor can defendants counsel claim to have made the inquiry into the facts and the law required by Rule 11." Plfs. Mot. for Sanctions at 2.

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999); *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

In addition, the Court must liberally interpret the complaint of a *pro se* plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

### B. Title VII

#### 1. The Statute of Limitations

As stated above, the defendants argue that the plaintiff's Title VII claims are time barred. In particular, the defendants claim that the plaintiff's Title VII claims are untimely because the amended complaint, which was the only complaint served on the defendants, was filed with the Court after the 90 day statute of limitations expired.

It is well established that a claim brought under Tile VII must be commenced within 90 days of a grievant's receipt of a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1); *see also Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 525 (2d Cir.1996); *Ocasio v. Fashion Institute of Tech.,* 86 F.Supp.2d 371, 375 (S.D.N.Y.2000). Rule 3 of the Fed. R. of Civ. P. provides that a "civil action is commenced by *filing* a complaint with the Court." (emphasis added). Upon filing the complaint, the statute of limitations is tolled, *Wilson v. Diocese of the New York Episcopal Church,* 96 Civ. 2400, 1998 WL 82921, at *8 (S.D.N.Y.1998), and the complaint must be served on the defendants within 120 of its filing. Fed.R.Civ.P. Rule 4(m). Specifically, Rule 4(m) provides in part:

> If service of the summons and the complaint is not made upon a defendant within 120 days after the filing of the

complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice . . .

■ Here, rather than serving the original complaint, Tekula filed and served the amended complaint within 120 days from the date his original complaint was filed. "While it is true that the filing of an amended complaint does not extend the 120 day period, so long as the amended complaint is filed and served within 120 days of filing the original complaint and does not add any causes of action barred by the statute of limitations, it does not matter that it is the amended summons and complaint that is served on a defendant named in the original complaint." *Wilson*, No. 96 Civ. 2400, 1998 WL 82921, at * 8 (internal citation omitted) (*citing White v. Steak & Ale of Little Rock, Inc.*, 839 F.Supp. 23, 25 (E.D.Ark.1993)) ("The Court notes, however, the plaintiff filed his first amended complaint . . . within 120 days of the date he filed his original complaint. Thus, the defendant received notice of the action within the period provided by Rule 4 for service of the summons and complaint when it was served the amended complaint.").

Here, the original complaint was filed on September 23, 2003. The amended complaint was filed on January 2, 2003 and served on January 6, 2003. Therefore, the defendant was timely served. *See id.*

### 2. As Against Curtis and Doroski

■ Title VII prohibits discrimination based on race by an "employer." 42 U.S.C. § 2000e–2. Under Title VII:

The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person. *Id.* The Second Circuit has "limit[ed] liability to employer-entities" and held that "individual defendants with supervisory

control over a plaintiff may not be held personally liable under Tule VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *see also Copeland v. Rosen*, 38 F.Supp.2d 298, 302 (S.D.N.Y.1999) ("Individual employees may not be held personally liable under Tile VII, even if they are supervisory personnel with the power to hire and fire other employees."). In this case, the plaintiff asserts Title VII claims against Curtis and Doroski. However, because a Title VII claim against an individual employee is treated as one for vicarious liability against the employer, the defendants' motion to dismiss the Title VII claims against Curtis and Doroski is granted. *See Copeland*, 38 F.Supp.2d at 302.

### 3. Retaliation

■ Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful practice by this subchapter . . ." 42 U.S.C. § 2000e–3(a). To plead a *prima facie case* of retaliation, an employee must allege that he "[1] engaged in protected participation or opposition, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the employee, and [4] that there was a casual relation between the adverse action and the employee's protected activity." *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208–09 (2d Cir.1990); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995).

Tekula's claim of retaliation will survive a motion to dismiss if, after construing all reasonable inferences and implications of the allegations in the complaint liberally in his favor, the Court determines that he has pleaded facts sufficient to support the elements of a prima facie case. *See Kreinik v. Showbran Photo, Inc.*, No. 02 Civ. 1172, 2003 WL 22339268, at *3 (S.D.N.Y. Oct.

14, 2003); *see also Mendelsohn v. Univ. Hosp.*, 178 F.Supp.2d 323, 329 (E.D.N.Y. 2002).

### a. Protected Participation or Opposition

■ "Opposition is a term that embraces more than complaints made in enforcement proceedings under Title VII." *Cassells v. Univ. Hospital at Stony Brook*, 740 F.Supp. 143, 146 (E.D.N.Y.1990). It may include direct complaints to the employer, or formal legal proceedings under statutes other than Title VII, so long as the practice complained of is one unlawful under Title VII. *See id.* (citation omitted), Moreover, opposition need not be to conduct actually found to violate Title VII, so long as the plaintiff held a "good faith, reasonable belief" that such conduct violated the law. *Manoharan v. Columbia Univ. College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)

■ The defendants argue that the plaintiff fails to state a claim for retaliation because he fails to allege that Toledo was singled out because of his race or any other protected activity. "Instead," the defendants' maintain, "the plaintiff alleges that the singling out was based on Toledo's accent." Mem. In Supp. of Mot. To Dismiss at 8–9. However, the defendants' contention that adverse employment actions based on a person's accent does not violate Title VII is incorrect.

Here, Tekula alleges that he informed Bergman and Doroski that he thought it would be "unfair and discriminatory to issue a warning to Jose." In particular, Tekula indicated that he believed that Toledo, a "dark skinned Hispanic" was being "single[d] out" because he "spoke with an accent." Am. Compl. ¶ 8.

EEOC regulations specifically define national origin discrimination as including "the denial of equal employment opportunity because ... an individual ... has the

... linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1; *see also Rivera v. Baccarat, Inc.*, 95 Civ. 9478, 1997 WL 400119, at *5 (S.D.N.Y. July 15, 1997) (*citing Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989)). In *Fragante*, the Ninth Circuit held that "[a]ccent and national origin are obviously inextricably intertwined in many cases." Therefore, "[a]n adverse employment decision may be predicated upon an individual's accent when—but only when—it interferes materially with job performance." *See Fragante*, 888 F.2d at 596; *see also Rivera v. Baccarat, Inc.*, 1997 WL 400119, at *5; *see also Carino v. Univ. of Oklahoma Board of Regents*, 750 F.2d 815, 819 (10th Cir.1984) (A plaintiff with a "noticeable" Filipino accent was improperly denied position where the accent did not interfere with ability to perform tasks).

In any event, even if the defendants' conduct with respect to Toledo did not violate Title VII, the Court finds that the plaintiff held a "good faith reasonable belief" that Title VII was violated. *See Manoharan v. Columbia Univ. College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

Accordingly, the plaintiff's pleadings satisfies the first prong of the retaliation cause of action.

### b. The Defendants' Awareness of the Protected Activity

Having found that Tekula's opposition to the defendants' desire to issue a written warning to Toledo is a protected activity under Title VII, the Court must next determine whether the defendants were aware of the plaintiff's activity.

Tekula alleges that he "informed Principal Bergman in person and defendant Doroski on the telephone" that he opposed issuing a written warning to Toledo. Am. Compl. ¶ 8. Accordingly, the plaintiff prop-

erly alleged that the defendants were aware of his protected activity.

### c. The Defendants' Adverse Action

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing ... or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The proper inquiry with regard to an alleged adverse action is "whether the employer's action constituted a materially adverse change in the *terms and conditions* of [the] plaintiff's current employment with that employer." *Copeland v. Rosen,* 38 F.Supp.2d 298, 307 (S.D.N.Y.1999) (*quoting Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997)) (emphasis in original) (internal quotation omitted).

Here, the plaintiff alleges that in retaliation for his protected activity, the defendants placed a written "memo of record" in his personnel file and subsequently terminated his employment. Am. Compl. ¶ 8. It is undisputed that the termination of Tekula is an adverse action under Title VII. *See id.*

### d. Casual Relation Between the Adverse Action and the Employee's Protected Activity

■ A causal connection between the adverse action and the protected activity is established where a plaintiff demonstrates "(1) direct proof of retaliatory animus directed against the [p]laintiff, (2) disparate treatment of similarly situated employees, or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. New York City Health and Hosp. Co.,* 160 F.Supp.2d 601, 604 (S.D.N.Y.2001); *see also Ashok v. Barnhart,* 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003); *see also Cifra v. General Elec. Co.,* 252 F.3d 205, 217 (2d Cir.2001).

The defendants' contend that because Tekula did not allege that Curtis, who authored the termination letter, was aware of the plaintiff's protected activity, he failed to allege a causal connection. The Court disagrees.

As stated above, a "causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *See Kreinik v. Showbran Photo, Inc.,* 2003 WL 22339268, at *3 (*citing Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)); *see also Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir.2002) ("[A] close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."). Although the Second Circuit has not specified how close in time the retaliatory action must be, here, less than one month passed from the time Tekula alleges that he engaged in the protected activity to the time he was given the termination letter. Accordingly, the Court finds that the alleged retaliatory action "closely followed" the plaintiff's alleged protected activity. *See Kreinik v. Showbran Photo, Inc.,* 2003 WL 22339268, at *3; *but see e.g. Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir.1990) (passage of three months too long to establish to establish retaliation). Accordingly, the defendants' motion to dismiss the Title VII claim against the School District is denied.

### C. Sections 1981 and 1983

The plaintiff also asserts causes of action under 42 U.S.C. §§ 1981 and 1983. Section 1981 prohibits intentional race, based discrimination in the workplace, *see Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998); *see also Turner v. Nat'l R.R. Passenger Corp.,* 181 F.Supp.2d 122, 126

(N.D.N.Y.2002), while Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

### 1. Section 1981

#### a. As to Curtis and Doroski

■ Section 1981, unlike Title VII, provides for individual liability on the part of non-employers. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.2000) (holding that individuals may be held liable under Section 1981); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1301 (2d Cir.1995). Although the Second Circuit has not expressly held that an individual must be a supervisor to be subject to Section 1981 liability, *Callahan v. Consolidated Edison Co. of New York*, 187 F.Supp.2d 132, 137 (S.D.N.Y.2002), "[i]n each of the cases that have allowed individual liability, the individuals have been supervisors who were personally involved in the discriminatory conduct." *Hicks v. IBM*, 44 F.Supp.2d 593, 597 (S.D.N.Y. 1999); *see also Callahan*, 187 F.Supp.2d at 137. Here, both Curtis and Doroski were employed in a supervisory capacity with the School District.

Section 1981 claims are analyzed under the same standards as Title VII claims. *Whidbee*, 223 F.3d at 75. Accordingly, to establish a *prima facie* case against Curtis and Doroski, Tekula must show that: (a) he was engaged in a protected activity, (b) the individual defendants were aware of that activity; (c) he suffered an adverse employment action, and (d) there was a causal connection among the protected activity, Curtis and Doroski's action, and the adverse employment action. *See Callahan*, 187 F.Supp.2d at 138 (*citing Tomka*, 66 F.3d at 1308 (outlining *prima facie* case for retaliation under Title VII)).

As set forth in Section B(3), *supra*, the plaintiff established a *prima facie* cause of action for retaliation under Title VII against the School District due to the actions of Curtis and Doroski. As such, the plaintiff also sets forth a *prima facie* cause of action against the individual defendants under Section 1981. Accordingly, the defendants' motion to dismiss the section 1981 claims against Curtis and Doroski is denied.

#### b. As to the School District

■ Section 1981 does not impose vicarious liability on municipalities for employee decisions made in their course of official duties. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 721, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). The plaintiff's Section 1981 claim against the School District is actionable only under Section 1983 because Section 1983 provides the "exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *See id; see also Mack v. Port Authority of New York and New Jersey*, 225 F.Supp.2d 376, 384 (S.D.N.Y.2002). Therefore, the plaintiff's Section 1981 claims against the School District will be analyzed below.

### 2. Section 1983

To state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived him of rights, privileges, or immunities secured by the Constitution of or laws of the United States." *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993).

### 3. As to Curtis and Doroski

Although "a claim for relief under 42 U.S.C. § 1983 need only allege that some person acting under color of state law deprived the claimant of a federal right," *Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir.1983); *see also Respass v. New York City Police Dept.*, 852 F.Supp. 173, 178 (E.D.N.Y.1994), it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). A complaint based on a violation under Section 1983 that does not allege the personal involvement of the defendant is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

■ A defendant may be personally involved in a constitutional deprivation within the meaning of section 1983 if he "directly participated in the infraction," or if he is a supervisory official, and he (1) failed to remedy the wrong after learning of the violation through a report or appeal; (2) created or continued a custom or policy under which unconstitutional practices occurred; or (3) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted).

■ Tekula alleges that Curtis was aware that he previously filed a complaint with the NYSDHR. He informed Doroski that he thought Toledo was being singled out because of his accent. As a result, Doroski placed a written memorandum in his personnel file, and Doroski gave the plaintiff the termination letter that was written by Curtis. These allegations are directly related to Tekula's federal claims against the School District. Accordingly, the defendants' motion to dismiss the Section 1983 against the individual defendants is denied.

### 4. As to the School District

■ Section 1983 requires that, to bring a claim against a municipality, a plaintiff must show that his rights were violated in pursuit of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ In order to maintain his claim against the School District, the plaintiff must allege (1) an official policy or custom that, (2) caused him to be subjected to, (3) the denial of a constitutional right. *See Lovell v. Comsewogue School District*, 214 F.Supp.2d 319, 323–324 (E.D.N.Y.2002) (*citing Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995). "Local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. Moreover, actions taken by persons whose activities represent official policy may constitute a custom or policy for Section 1983's purposes. *See Lovell v. Comsewogue School District*, 214 F.Supp.2d 319, 323–324 (E.D.N.Y.2002). Such persons "need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's] business.'" *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) (*quoting St. Louis v. Praprotnik*, 485

U.S. 112, 113, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

■ The defendants argue that the plaintiff failed to state a Section 1983 claim against the School District because he did not allege that the discriminatory conduct was pursuant to a policy or custom. However, Tekula's section 1983 claim against the School District may stand if it is determined that Curtis, as the superintendent, has final policy making activity attributable to the School District. *See Lovell,* 214 F.Supp.2d at 323–324. Because Curtis may be determined to be a final policy maker on behalf of the School District, *Rabideau v. Beekmantown Central Sch. Dist.,* 89 F.Supp.2d 263, 269 (N.D.N.Y. 2000) (Under New York law, a principal of a school possessed final policymaking authority); *see also Hurdle v. Bd. of Educ. for City of New York,* No. 01 Civ. 4703, 2003 WL 22080721, at *2 (E.D.N.Y. Sept.9, 2003) (New York school district superintendent was policy maker whose decision to transfer a school principal could impose liability on Board of Education under Section 1983); *Ludd v. Rockville Centre Union Free Sch. Dist.,* No. 89 Civ. 2413, 1990 WL 31650, *14 (E.D.N.Y. Mar.9, 1990); *Payne v. Huntington Union Free Sch. Dist.,* 219 F.Supp.2d 273, 276 (E.D.N.Y. 2002), the defendants' motion to dismiss the section 1983 claims against the School District is denied.

## D. Intentional Infliction of Emotional Distress

Paragraph six of the amended complaint suggests a claim for intentional infliction of emotional distress. Defendants move to dismiss this claim on the ground that it is time barred due to the lapse of the one year statute of limitations. Section 215 of the New York Civil Practice Rules ("CPLR") imposes a one year statute of limitations for intentional infliction of emotional distress. *See also Kwarren v. American Airlines,* 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dep't 2003) (dismissing claim for intentional infliction of emotional distress where alleged comments were made more than one year prior to the filing of the complaint); *see also Sharabura v. Taylor,* No. 03 Civ. 1866, 2003 WL 22170601, at *3 (E.D.N.Y. Sept.16, 2003).

■ Here, the plaintiff was terminated on February 4, 2000 and his original complaint was filed on September 23, 2002. Even though Tekula filed his complaint with the NYSDHR on March 18, 2000, such action does not toll the statute of limitations on an intentional infliction of emotional distress claim. *See Sharabura,* 2003 WL 22170601, at *4.

Accordingly, the plaintiff's claim for intentional infliction of emotional distress is untimely and is dismissed.

## E. The Plaintiff's Motion for Sanctions

As stated above, also before the Court is the plaintiff's "Motion for Sanctions" against the defendants and their counsel. The plaintiff claims that "none of the arguments made or legal authorities relied on by [the] defendants could be reasonably construed to lead to the legal conclusions they assert, nor can defendants counsel claim to have made the inquiry into the facts and the law required by Rule 11." Plfs. Mot. for Sanctions at 2.

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *See Kropelnicki v. Siegel,* 290 F.3d 118, 131 (2d Cir.2002) (internal quotations and citations omitted).

Although the Court denied many of the defendants' contentions in support of their motion to dismiss, the Court does not find that the arguments presented were made in bad faith or that they were unreasonable.

Accordingly, the plaintiff's motion for sanctions is denied.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion to dismiss the Title VII claims against Dororski and Curtis is **GRANTED**; and it is further

**ORDERED**, that the motion to dismiss the Title VII claims against the School District is **DENIED**; and it is further

**ORDERED**, that the motion to dismiss the Section 1981 and Section 1983 claims against the Doroski and Curtis is **DENIED**; and it is further

**ORDERED**, that the motion to dismiss the Section 1981 and Section 1983 claims against the School District is **DENIED**; and it is further

**ORDERED**, that the motion to dismiss the claim for intentional infliction of emotional distress is **GRANTED**; and it is further

**ORDERED**, that the plaintiff's motion for sanctions is **DENIED**; and it is further

**ORDERED**, that the parties are to proceed pursuant to the Pretrial Scheduling Order of United States Magistrate Judge Arlene R. Lindsay.

**SO ORDERED.**